ADELLA DOBROWOLSKI, PETITIONER-RESPONDENT, v. MARY GLOWACKI, ADMINISTRATRIX OF THE ESTATE OF WALTER GLOWACKI, DECEASED, DEFENDANT-APPELLANT.

Argued May 21, 1947—Decided September 12, 1947.

For the appellant, *Samuel Levinson*.

For the respondent, *Samuel P. Orlando*.

The opinion of the court was delivered by

HEHER, J. The issue here is whether the dependents of Walter Dobrowolski, deceased, have sustained the burden of proving that his death was the proximate result of an injury by accident arising out of and in the course of his employment with appellant's decedent, Walter Glowacki. *R. S.* 34:15–7, *et seq.*

The Workmen's Compensation Bureau, after a formal hearing, dismissed the petition for failure of proof. The Camden Common Pleas, on appeal, reversed the judgment and remanded the cause to the Bureau "to make findings of facts not inconsistent with the views * * * expressed in the opinion" of the Pleas "after hearing the whole case." This is a novel procedure, for the opinion embodied contrary factual findings and reasoning, and the statute enjoins the Common Pleas Judge "to decide the merits of the controversy" on the record made in the Bureau. *R. S.* 34:15–66. There is a trial *de novo* in the Pleas upon the record. *Sweigard* v. *Richards,* 118 *N. J. L.* 394. The judge of that court may not remand the cause and direct the Bureau to find the facts as he perceives them. Yet there is a suggestion in the opinion of the Pleas that Deputy Commissioner Kraft erred in overruling testimony of a conversation between the deceased workman and his employer as to the circumstances attending his alleged injury. The judge conceived that this testimony was admissible, "not as proof of the accident itself, but to fix the

time and place of its happening." But the evidence was actually adduced, although later struck out, and therefore it was available for the consideration of the Pleas, if competent for the purpose.

Upon the remand, the Bureau again dismissed the petition. No further testimony was taken by either side. The evidence adverted to was again held to be incompetent; and it was found that the proofs failed to establish an industrial accident. Again, there was an appeal to the Pleas; and the judgment was reversed and compensation awarded to the decedent's dependents. *Certiorari* was granted to review this judgment; and there was an affirmance in the Supreme Court.

We entertain the view voiced by the Deputy Commissioner. The proofs are not in quality sufficient to bring the tendered hypothesis of a compensable accident within the realm of reasonable probability of truth.

Decedent died on December 6th, 1942, at the age of 66 years. The cause of death was lobar pneumonia, with associated acute fibrinous pleuritis. An autopsy confirmed this diagnosis; and it revealed also a transverse line fracture of the sternum, at the level of the fourth rib, with evidence of injury to the soft tissue behind the sternum but no indication of injury to the soft tissue over the sternum. The surgeon who performed the post-mortem, a witness called on behalf of the decedent's dependents, said that the fracture of the sternum was an indication of a previous trauma, but that the existence of a causal relation between the trauma and the later pneumonic condition would depend on the time interval. On the assumption that the trauma had occurred on November 12th or 13th, 1942, he was of the opinion that it was "a probable predisposing factor" in producing the fatal pneumonia. If, he said, force sufficient to fracture the sternum had been applied within one month of the onset of the pneumonia, "it might definitely produce areas of hemorrhage in the lung which * * * might be the seeding ground for bacteria to develop and cause lobar pneumonia." There was "no displacement of the transverse fracture;" it was "a line fracture." The petition for compensation charged the

injury was sustained on November 22d, 1942; by an amendment made in the course of the hearing in the Bureau, it was alleged to have occurred on the prior November 12th or 13th. Appellant conducted a bakery, and decedent was employed by him as a baker, and had been so employed for about twenty years. The allegation is that decedent was "struck in the chest" by a tin bucket used in pouring dough into a mixing machine. The bucket weighed thirty and thirty-five pounds when filled with flour; and decedent was required to lift it five or six feet above the floor level. There were nineteen other employees in the bakery at the time of the alleged mishap.

But if we assume a causal connection between the mortal pneumonia and the sternal fracture and the incidental injury, there is no competent proof—not even a scintilla—of an industrial accident as the origin of the sternal wound. The judge of the Pleas found such evidence in the testimony of the employer that on November 13th, 1942, at approximately 2:30 P. M., decedent came to him on the first floor of the bakery and said: "Boss, I hurt myself in this place. Upstairs at the dough-mixing machine. I hurt myself on chest." But this evidence, offered as part of the *res gestœ,* was merely narrative of what was represented to be a past occurrence, and was therefore essentially hearsay and inadmissible to prove the fact of the occurrence, although admissible to show notice of the asserted accident to the employer in keeping with the statutory policy. The declaration, as proved, lacked the element of spontaneity; it was not exclamatory in character— the undesigned incident or emanation of the alleged happening. The episode, as related, affords no circumstantial guarantee that the declaration was made at a time when the reflective faculties were stilled and so was not the product of the calculated policy of the actor. It was not made before there had been time to contrive and misrepresent; and it therefore has no probative value. *Slayback Van Order Co.* v. *Eiben,* 115 *N. J. L.* 17; *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *Id.* 533.

The judge conceived that this evidence suffced because it gave rise to the "reasonable hypothesis" that the "injury

proven" was "accidental in its character rather than one intentionally inflicted." But this is a *non sequitur*. The criterion is plainly illusory. Proof of an accidental injury is not *per se* proof that the accident arose out of and in the course of the victim's employment; and this is the burden which the law casts upon the claimant. Proof of the sternal fracture does not, without more, sustain the inference of a causal relation to the master's service. To indulge this inference in the particular circumstances would be sheer speculation. The injury could have come from a variety of causes wholly unrelated to the employment. There is no substitute for proof. The rule of reasonable probability of truth is itself a standard of proof that excludes purely speculative theory as the basis for proceeding to judgment for affirmative relief.

But respondent invokes as evidence in this regard what is termed an "admission against interest" made by appellant. Respondent's attorney, Mr. Orlando, took the witness stand and testified that in the course of an investigation of the case, he interviewed the now deceased employer, with the following result: "In the conversation that I had with the respondent I asked him whether or not he knew that this man had been hurt at his place of business. He said 'Yes.' That on November 13th, 1942, sometime in the afternoon, he wasn't quite exact about the time, between 2:00 and 2:30, he learned from the decedent himself that he had been injured while attempting to pour flour in the dough-mixing machine from an iron bucket." It is said that the employer thereby "admitted" that the deceased employee "had been injured" in the pursuit of his employment. But this suggests a misapprehension of the purport of the declaration and the pertinent principles of law. The language bears no such interpretation. It was an admission merely of notice of the employee's claim of a compensable injury, not of the happening of the accident asserted as the origin of the injury. What has been said disposes of the point.

Admissions are receivable against the party-opponent because they have the quality of inconsistency with his present claim, *i. e.*, with the facts affirmed in the pleadings or in the testimony, and therefore have probative value. *Schloss* v.

*Trounstine,* 135 *N. J. L.* 11. Apart from the discrediting inference arising from a prior self-contradiction, such extrajudicial utterances, when once in, also have such probative force as those of any person having similar testimonial qualities, and to that extent have affirmative testimonial value. *Wigmore on Evidence* (*3d ed.*), §§ 1018, 1048, *et seq.* Here, the admission was not receivable as testimony of the declarant to prove the truth of the fact asserted, *i. e.,* the occurrence of the industrial accident. What was thus attributed to the declarant did not purport to be an admission of the happening of the claimed accident. It was in no sense inconsistent with the present contention of the declarant employer's personal representative that the deceased employee did not suffer a compensable injury. It was simply a narrative of a declaration by the employee which the employer, himself, related on the witness stand and which, as we have seen, was not a part of the *res gestæ* and was therefore incompetent under the hearsay rule. It cannot be tortured into an admission of the occurrence of a compensable accident. It is not a credible testimonial assertion; and it does not have the quality of a discrediting inconsistency. The Deputy Commissioner properly assayed this piece of testimony.

The judgment of the Supreme Court affirming the judgment of the Common Pleas is accordingly reversed; and the cause is remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, COLIE, WACHENFELD, BURLING, WELLS, DILL, FREUND, McGEEHAN, McLEAN, JJ. 12.