38 N.J. Super. 478 (1956)
119 A.2d 467
WILLIAM H. CORBETT, PLAINTIFF-APPELLANT,
v.
ROBERT VANKIRK AND EARL L. WILLIAMS, JR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1955.
Decided January 5, 1956.
*481 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Julius E. Kramer argued the cause for appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. William V. Breslin argued the cause for respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
The date of the occurrence of the mishap is May 11, 1954. The scene is a sand pit in the Township of Cedar Grove, Essex County. The plaintiff sustained bodily injuries for which he sought to recover from the defendants compensatory damages. The verdict of the jury was no cause of action, and from the consequent judgment the plaintiff appeals specifying four reasons for reversal, all of which pertain to the judicial action of the trial judge in the stated particulars.
A mere summary of the evidence will expose the footing upon which the asserted trial errors rest. The spacious pit was one from which for several months prior to May 11, 1954 earth was being extracted by three crane shovels and transported therefrom by as many as 60 dump trucks. The plaintiff had been at the pit in the employ of Kitchell, Incorporated, in the capacity of an oiler for the past two and a half months and engaged in currently lubricating one of the shovels.
The defendant VanKirk was a driver of one of the motor trucks owned by his employer, the co-defendant, Williams. It was the custom and normal practice for the truck drivers upon entering the pit from the highway to place their empty vehicles in line and, as the forward trucks became loaded *482 and departed, for the next ones in line to back up to the loading shovels progressively.
On the occasion of the accident the plaintiff had just returned from lunch at about 1:30 P.M. and, in quest of a supply of lubricating grease and the brush or applicator, he passed beside VanKirk and his truck waiting its turn to be loaded. Whether the truck was at that time facing the shovel or had previously been turned around preparatory to backing up to the shovel was a circumstance drawn in controversy by the contradictory testimony. The distance of the standing truck from the shovel at the time was likewise a subject concerning which the testimony was divergent and conflicting. However, concededly it was in backing the truck toward the shovel that it collided with the plaintiff and its left rear wheel passed over the plaintiff's leg.
Points I and II advocated on behalf of the plaintiff have been consolidated to read: "The Trial Judge committed prejudicial error in refusing to accept in evidence the signed statement of the defendant VanKirk which contradicted the testimony given by this defendant at the trial." This criticism of the court's ruling has perceptible merit.
Certain it is that a relevant statement or admission against interest made by a party to the action constitutes an affirmative matter of substantive proof by the opposite party. Such evidence is not, as in the case of non-party witnesses, solely to contradict or discredit; it is affirmative proof of probative value. McBlain v. Edgar, 65 N.J.L. 634 (E. & A. 1901); Newhouse v. Phillips, 110 N.J.L. 421, 424 (E. & A. 1933); Ambrose v. Indemnity Insurance Co. of North America, 124 N.J.L. 438 (E. & A. 1940); Schloss v. Trounstine, 135 N.J.L. 11, 15 (Sup. Ct. 1946); Dobrowolski v. Glowacki, 136 N.J.L. 167, 171 (E. & A. 1947); Link v. Eastern Aircraft, &c., General Motors Corp., 136 N.J.L. 540 (E. & A. 1948); Cherr v. Rubenstein, 22 N.J. Super. 212, 216 (App. Div. 1952).
It has been previously stated that the direction in which the motor truck was facing at the time the plaintiff walked past it and its distance then from the loading shovel were *483 circumstances accompanying and surrounding the occurrence of the mishap of relatively major importance and in reality constituted the two factual incidents predominantly in dispute.
At the trial the defendant VanKirk testified that when the plaintiff walked past, the rear of the truck was facing the shovel and at a distance of about 30 feet from it. Upon cross-examination by counsel for the plaintiff he was confronted with a written statement purporting to have been taken from him on May 17, 1954 by a "trial prepman" in which it is represented that: "The front of my truck was facing the Unit Shovel when I saw Corbett pass me, and I then made a right hand swing in preparation to then back up to the Unit Shovel to be loaded," and "At the above described time & date I was seated in my truck to the rear of shovel No. 2 and the Unit Shovel at a distance of about 100 feet from both shovels in the pit."
VanKirk frankly acknowledged that he was interrogated by the "prepman" on May 17, 1954 who wrote the statement; that he subscribed his signature at the bottom of each of the first two pages, initialed a correction of page 2, and at the conclusion of the statement on page 3, he himself wrote: "The above 3 pages are true," beneath which he again placed his signature. Cf. Daum v. North Jersey St. Ry. Co., 69 N.J.L. 1, 5 (Sup. Ct. 1903), affirmed 70 N.J.L. 338 (E. & A. 1904); Wassmer v. Public Service Electric & Gas Co., 122 N.J.L. 367, 372 (E. & A. 1939).
At the conclusion of the introduction of the oral testimony at the trial, counsel for the plaintiff presented the statement and requested its admission in evidence. Said he:
"Mr. Kramer: I would like to offer in evidence at this time the statement of Robert VanKirk which has been identified and which he testified that he signed.
Mr. Breslin: Well, he has testified he did not read it, and I submit there must be proof that he read it.
The Court: Are you objecting?
Mr. Breslin: Yes, your Honor.
The Court: Sustain the objection.
Mr. Kramer: All right. We rest."
*484 True, VanKirk denied that he read the statement. He said, however, "I just glanced over it." He did not indicate that any fraud or deceit was visited upon him to induce either the several subscriptions of his signature thereto or his representation that "The above 3 pages are true." Compare in principle, Silbros, Inc. v. Solomon, 139 N.J. Eq. 528, 532 (Ch. 1947).
Nevertheless the trial court seems to have entertained a conclusive assumption that VanKirk did not rather than the inference that he did read, understand and assent to the contents of the statement which admittedly bore his signatures.
Manifestly the statement was admissible in evidence in the prosecution of the action against the defendant VanKirk and its exclusion for the evident reason was plainly erroneous.
We undertake then to cogitate whether a denial to reverse the final judgment for that cause would be oppugnant to the administration of substantial justice. R.R. 1:5-3(b); R.R. 2:5. This is a vital directive of the modern appellate creed.
It has been noticed that immediately following the ruling sustaining the objection to the admission of the statement in evidence, counsel for the plaintiff said, "All right. We rest." It may be that in effect we should ascribe to the words "all right" the ratifying signification of "Amen." Error, qui non resistitur, approbatur. But we think that the intended import of the remark was an expression of respectful submission rather than one of acquiescence.
In considering the harmful and prejudicial consequence, if any, of the exclusion of the statement, there is another feature of the trial that more seriously engages our attention. The written statement was not marked for identification at the trial and was not reproduced in the printed appendix accompanying the present appeal, but at the oral argument through the consent of counsel photostatic copies of it were furnished to us. Its availability has enabled us to compare its contents with the several quotations from it which were embodied in the questions addressed to VanKirk by counsel *485 for the plaintiff in the cross-examination. True, we discover that every word of the statement was embraced by the interrogation when the latter is followed in its entirety.
And so it may be said that in that ostensible fashion the jury became aware of all of the ingredient declarations and representations of the statement. However, the jurors had also heard VanKirk deny some of the assertions therein and also heard the ruling of the court that the written statement itself was not competent evidence because the defendant VanKirk had not read it and that therefore the jurors were not to be permitted to examine and read it. Did not that action of the court prejudicially decimate the influential significance of their indirectly acquired knowledge of the contents of the statement? We are inclined to believe so.
But moreover, to psychologize the mental transmission of information, thoughts and ideas, experience has taught us that the ocular personal examination of a tangible written exhibit is more pervading, absorbing and impressive than a merely momentary and transient oral exposure of its contents. Words often go flat. The word on the page lives in sight. And, then, of further significance is the consciousness that the exhibit in the present case itself possessed the competency of substantive and affirmative evidence against the defendant VanKirk. In reversing the judgment for the exclusion of a statement signed by the plaintiff in Roberts v. Saunders, 118 N.J.L. 548 (E. & A. 1937), it was stated at p. 550:
"It was clearly error to exclude this paper. It is argued that the error was harmless, as Gohl's testimony to what plaintiff had said was already before the jury. Of course, Gohl had so testified, but defendant was entitled to have the jury inspect the paper itself with plaintiff's admitted signature * * *. Moreover, the paper was an admission by a party to the suit, and Saunders was entitled to it in that aspect as well."
Such evidence was of material importance since the plaintiff was walking with his back toward the truck and did not witness its subsequent movements.
*486 Since it is not evident that VanKirk made the statement in the pursuit of the business of his employer, Williams, its assertions cannot in their character as admissions be legally imputed to Williams. Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145 (1951). Nevertheless VanKirk was the principal witness for the defense and his contradictory explanations in the two aforementioned particulars tended adversely to implicate the credibility of his testimony.
Only by the technique of a logical analysis of the nature of the issues and the state of the evidence in the particular case can the harmful or prejudicial effect, if any, of an erroneous ruling of the trial court be determined. It is not the inveterate rule that the mistaken exclusion of legally admissible evidence is necessarily rendered harmless by the event that its subject matter could be inferred from other evidence which was received or that its import otherwise came to the general attention of the jury. The influential character and relationship of the proffered evidence to a material point in controversy and the substantiality of the right of the party to have it admitted, are considerations of paramount significance. Such considerations must be viewed in the light of the entire case. Cherr v. Rubenstein, supra.
The problem loses complexity where the excluded evidence would have been of merely slight or conjectural value and related to a factual issue as to which there was no influential materiality in the ultimate decision of the case. Such an error does not ordinarily warrant a reversal of that final judgment. To the contrary, the erroneous exclusion of evidence the existence of which in the case might by reason of its relevant materiality to a cardinal contentious issue therein have in reason altered the verdict more favorably to the appellant, the mistaken ruling is regarded as an injurious impairment of a substantial right. See text and citations, 3 Am. Jur. 585, § 1030 et seq.
The process really amounts to an adjustment of weights and a reading of the scales, sometimes doubtless illustrative to the bar of the nimbleness of judicial sight and thought. *487 But an artificial and universal formula is likely to be a contrivance in which a judge gets his fingers pinched.
We conclude that in recognition of the predominant factual issues in controversy in the present case and the importance of the testimony of VanKirk, the statement not only had the conduciveness to impugn the credibility of VanKirk as a witness, but was itself a relevant evidential exhibit in the action against him, the exclusion of which from the triers of the facts prejudiced the plaintiff's substantial rights.
In this view, we need not discuss the remaining reasons assigned for reversal other than to remark that in scrutinizing the record completely, the following passage of the court's charge became noticeable, to which incidental reference might well be made:
"Now, assumption of the risk has this element that perhaps I did not give you: If a person knows of an existing danger and realizes that there is a dangerous condition and walks into that position knowingly, he assumes the risk of whatever might happen."
True, no matter what happens, there always is someone who tells you he knew it would. But there are still a few floors in every principle of law. Here the periphery of the instruction as phrased seems to be inordinately boundless. It is our thought that the risks assumed are only those proximately attributable causatively to the dangerous, perilous or hazardous conditions known to the person. There is a difference between an unforeseen peril and being overtaken by one recklessly incurred.
The judgment is reversed. A new trial awarded. Costs to abide.