39 N.J. Super. 575 (1956)
121 A.2d 742
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF-RESPONDENT,
v.
ARTHUR F. WOOD AND HELEN A. WOOD, HIS WIFE, DEFENDANTS-APPELLANTS, AND TOWNSHIP OF MATAWAN, ETC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided March 27, 1956.
*577 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Sam Weiss argued the cause for appellants (Messrs. Heuser & Heuser, attorneys; Mr. Ralph S. Heuser, of counsel).
Mr. Walter L. Smith, Jr., argued the cause for respondent (Mr. Walter Goldberg, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The New Jersey Highway Authority, functioning pursuant to the statutory terms of chapter 16 of the Laws of 1952, instituted the present action on August 24, 1953 to acquire in fee simple by condemnation the 1.42 acres of lands with the buildings thereon of the defendants Arthur F. Wood and Helen A. Wood, his wife, situate in the Township of Matawan, Monmouth County.
The public use for which the acquisition of the premises was alleged to be reasonably necessary was the construction and maintenance of the "Garden State Parkway."
Except for some delay in surrendering to the Authority actual possession of the property, the condemnation action progressed regularly. The award of the commissioners was $16,700, from which the defendants prosecuted an appeal to the Law Division of this court where the jury resolved that the fair value of the property and incidental loss amounted to $15,000. A new trial was denied and the present appeal challenges the propriety of that denial and of the final judgment.
Our appellate consideration of the trial centers predominantly upon the admission in evidence of certain photographs of the interior of the dwelling house offered on behalf of the plaintiff. A prefatory disclosure of the background of the asserted error is necessary.
*578 Following the filing of the complaint, the plaintiff on the same day filed with the Clerk of the County of Monmouth and with the clerk of this court a declaration of taking in conformity with the terms and provisions of N.J.S.A. 27:12B-7, stating therein the estimated just compensation for the acquisition of the property to be $15,500 and made the requisite deposit. The defendants, however, refused to vacate and surrender actual possession of the premises to the plaintiff, and in consequence the plaintiff was obliged to petition the court for an order for possession. The court commanded the defendants to relinquish their occupancy of the dwelling 50 days from September 4, 1953. By consent the period was thereafter extended to 57 days.
The defendants declare that they discontinued their habitation of the house on October 31, 1953, but other testimony indicated that Mrs. Wood was observed in person on and about the property daily up to and including November 2, 1953. The plaintiff assumed possession of the dwelling house on November 3, 1953. The doors were locked, and upon forcibly entering the house, civil engineer Conlon observed that some parts of the interior appeared to have been maliciously damaged as if vandalized. He thereupon on the afternoon of that day photographed the then existing conditions. Those were the photographs offered and admitted in evidence at the instance of the plaintiff.
Mrs. Wood was antagonistic to the public appropriation of her home. It was made evident that she had withheld from the keys mailed to the plaintiff a key with which to enter the back door, and was also aware of the damage done to the fireplace, bathroom, and walls when interviewed on November 2, 1953.
It is not unlikely that the disclosure of the mischievous depreciation in the condition of the house in the circumstantial setting generated in the minds of the jurors an influential suspicion, if not an inference, that in anger the defendants, or one of them, had caused the damage, but the inquiry arises whether the state and condition of the *579 building on November 3, 1953, the date on which the plaintiff acquired actual possession, unless it reflected in some degree the condition existing on August 24, 1953, was a relevant subject of proof. As previously stated, the present action was commenced on August 24, 1953.
Section 27:12B-7 of the New Jersey Highway Authority Act reads:
"Upon the exercise of the power of eminent domain by the Authority, the compensation to be paid thereunder shall be ascertained and paid in the manner provided in chapter one of Title 20 of the Revised Statutes in so far as the provisions thereof are applicable and not inconsistent with the provisions contained in this act."
Section 20:1-9 of Title 20 (L. 1953, c. 20, p. 363, § 18) directs that "a just and equitable appraisement of the value of the" land and property "and an assessment of the amount to be paid by the plaintiff for the land or other property and damages as aforesaid" shall be made "as of the date of the commencement of the action for condemnation."
A similar rule has long prevailed in our eminent domain legislation. Vide, Manda, Inc. v. Delaware, L. & W.R. Co., 89 N.J.L. 327 (E. & A. 1916); Ross v. Commissioners of Palisades Interstate Park, 90 N.J.L. 461 (Sup. Ct. 1917). For the rule in equity, see Yara Engineering Corp. v. City of Newark, 136 N.J. Eq. 453 (Ch. 1945).
The concise pretrial order specified the issue in this fashion:
"1. This is an appeal from the award of three commissioners pursuant to R.S. 20:1-1, et al."
It is observed that the testimony of all of the expert witnesses relative to the value of the premises expressed appraisals as of August 24, 1953. Illustrative is the interrogation in that respect of the plaintiff's only real estate expert:
"Well, at the time you examined the property, Mr. Friday, the house was in good condition? A. At the time I examined the property *580 it was in good condition, and it was very apparent that people were living in it, and Mrs. Wood showed me through."
Mr. Friday examined the property on June 22 or 23, 1953.
Moreover the following passage is contained in the court's charge:
"The date on which the valuation is to be established, of course, is the date of the actual taking, which I believe was August 24, 1953, although your recollection will be the determining factor."
The circumstantial indication that perchance the defendants were the persons who committed the waste did not, we think, rise above a conjectural basis.
Therefore in recognition of the only issue truly projected for the determination of the jury, we are of the opinion that the photographs taken of the curiously and unaccountably injurious conditions of the property on November 3, 1953 were erroneously admitted in evidence and improperly submitted to the inspection and consideration of the jury.
Our immediate task is to determine whether the jury was misguided concerning the valuation date; whether the jury was in reasonable probability provoked and incensed by the knowledge of the diabolical injury done to the house; and whether the defendants were by reason of the occurrences materially deprived of substantial justice. R.R. 1:5-3(a), (b) or (c); R.R. 2:5.
In this undertaking there are additional contrastive considerations which tinge the problem with somewhat delicate distinctions both for and against the nullification of the judgment. We shall mention them with the consciousness that we must admeasure the persuasive forces that radiate from each.
Counsel for the defendants obviously entertained a misconception of the valuation date for the reason which he expressed in his objection to the admissibility of the plaintiff's photographs was that: "They don't represent the condition of the house as it was at the time we left it." Subsequently he repeated, "Sir, I still maintain the same objection. There *581 is no proof that these pictures portray the condition of the house at the time we left it * * *." And, finally, "Well, sir, if they do not prove that this is the condition in which the interior of the house was upon the day we left it, then these pictures are immaterial."
The trial judge provisionally admitted them in evidence, and it is evident that counsel for the defendants did not thereafter request the court to extract them from the evidence or to instruct the jury to disregard them.
Another consideration of significance is that many, possibly as many as 19, photographs of the dwelling, its exterior, interior, and surrounding grounds were introduced in evidence by the defendants which illustrated the attractive and picturesque characteristics of the property existing at the time of the institution of the action to condemn it. Indeed, some of them portrayed the former undefaced state of those particular parts of the home that the plaintiff's exhibits revealed to have been subsequently defaced and disfigured.
It might be rationalized that the photographs produced by the defendants extinguished by contrast the effect of the photographic exposures presented by the plaintiff. But we cannot be inattentive to the conception that the prejudicial influence of the plaintiff's scenes inhered primarily in the implications which they created and in their competency to engender a measure of resentment in the attitude of the jurors toward the claim of the defendants. It is the reasonable probability that such was the consequence that causes us grave concern.
It is also appropriate to divulge that both the dwelling house and the garage situate on the property on August 24, 1953 had in the progress of the highway construction been demolished by the plaintiff-condemnor before the trial jury viewed the area.
Of some contributory interest is the comment made by the trial judge in denying the application for a new trial:
"Personally, I feel that the house, from the testimony and my consideration of those photographs which I did see  and there were so many they were not all handed to the Court  I don't know *582 whether this is in continuity or not, but personally I feel that the value or judgment returned should have been slightly higher than that which was returned by the jury. I never at any time had the impression that they should have returned a judgment such as the defendants were seeking or the top valuation as testified to by their expert, but I did feel from listening to all the experts and considering their testimony that the verdict should have been a little higher."
We have no doubt that where the condemnor suffers a loss by reason of the commission of waste by the condemnee after the commencement of the action, the issue in its relation to the determination of just compensation can be raised in the action by an appropriate supplemental pleading and at the pretrial, but no such allegation or issue was in that manner expressly advanced here. In this instance it was the evident intention of the condemnor to demolish the building.
We have recently stated in Corbett v. Van Kirk, 38 N.J. Super. 478, 486 (App. Div. 1956):
"Only by the technique of a logical analysis of the nature of the issues and the state of the evidence in the particular case can the harmful or prejudicial effect, if any, of an erroneous ruling of the trial court be determined. * * * Such considerations must be viewed in the light of the entire case."
And so here, in our survey of all of the distinctive features of the case, we think it is also quite probable that the use by the trial judge in his instructions of the expression "the date of the actual taking, which I believe was August 24, 1953, although your recollection will be the determining factor," may well have guided the jurors to the understanding from their recollection of the circumstances that the date of the "actual taking" by the plaintiff was November 3, 1953.
In the exercise of our appellate supervisory power, we have concluded that a denial of a new trial of the present action would be inconsistent with our duty to safeguard the interests of substantial justice.
The judgment is reversed and a new trial directed.