WILLIAM B. WASSMER, INDIVIDUALLY, AND AS ADMINIS-
TRATOR AD PROSEQUENDUM OF MARY WASSMER,
DECEASED, AND WILLIAM J. MOTT, INDIVIDUALLY
AND AS HUSBAND OF MARY A. MOTT, AND MARY A.
MOTT, PLAINTIFFS-APPELLANTS. v. PUBLIC SERVICE
ELECTRIC AND GAS COMPANY, DEFENDANT-RESPOND-
ENT.

Argued February 7, 1939—Decided April 21, 1939.

For the plaintiffs-appellants, *Michael J. Murphy* and *Peter J. McGinnis.*

For the defendant-respondent, *Henry H. Fryling, William H. Speer* and *Arthur C. Gillette.*

The opinion of the court was delivered by

DONGES, J.    William B. Wassmer, individually and as administrator *ad prosequendum* of his wife, Mary Wassmer, deceased, and William J. Mott and Mary A. Mott, his wife, brought suit against the Public Service Electric and Gas Company to recover for damages and injuries growing out of a collision between an automobile of the defendant and one owned and driven by Wassmer, in which Mrs. Wassmer and Mr. and Mrs. Mott were passengers.

The collision occurred on the afternoon of Sunday, June 23d, 1935, at the intersection of Hamburg Turnpike and Jackson avenue, in Wayne township, Passaic county. This is not a right-angled corner. As shown by the map, Jackson avenue does not cross the turnpike but intersects it at an angle of approximately forty-five degrees. The turnpike is a four-lane highway. Wassmer was driving his car on this highway in a generally northwest direction and desired to turn left into Jackson avenue. This required less than a right angle turn; one of about forty-five degrees. He attempted to make this crossing as two cars were approaching in the opposite direction; the defendant's car, driven by its employe Abraham Van Genderen, and one owned and operated by Dexter G. Littell. Plaintiff's car was struck first by defendant's car and then by Littell's, and thrown against a pole. Mrs. Wassmer was killed; the other plaintiffs sustained injuries. As to Wassmer, individually, the trial court ordered a nonsuit; as to Wassmer, as administrator *ad prosequendum,* and as to Mr. and Mrs. Mott, there was a jury verdict for the defendant. All of the plaintiffs appeal.

Plaintiffs-appellants have not printed all of the testimony taken at the trial. Of the plaintiffs' witnesses we have before us only the testimony of the draughtsman of the map in evidence and that of Mr. Wassmer. Of the defendant's witnesses only the testimony of Mr. and Mrs. Littell is printed. The evidence given by some twenty other witnesses has been omitted. Defendant-respondent served notice of objections to the state of the case, but did not bring the matter to the court's attention by way of motion to compel the printing, and did not proceed to print the matter on its own behalf. The record before us is sufficient for the determination of the questions presented.

The first point argued is that it was error to grant the motion for nonsuit as to William B. Wassmer, individually, on the ground of his contributory negligence. Wassmer testified that he was traveling on his extreme right-hand side of the road as he proceeded northwestwardly, going away from Paterson. When he reached Jackson avenue he pulled over to the left-hand lane of the two on his side of the road and

came to a full stop, to allow some traffic going toward Paterson, or in the opposite direction to that which he faced, to pass the intersection. He then looked and observed that the road was clear except for a car coming over the brow of the hill, some three hundred feet away. He started to make the crossing into Jackson avenue. He reached a point about half way across the southbound portion of the road when he made another observation and saw two cars about abreast of a well situated along the roadside. This well is said to be about one hundred and five feet from the center line of Jackson avenue. Wassmer testified that the car in the lane toward the center of the road was the car he had previously seen coming over the hill. This was Littell's Buick. The other automobile, the defendant's Ford, was in the lane toward the side of the road and was passing the Buick. Both cars were going at a terrific speed. Wassmer testified that he proceeded to a point where his front wheels were just into Jackson avenue when the defendant's car struck his car at about the center of the front door, turning his car around and forcing it back into the path of the Littell Buick. Littell's car struck plaintiff's and threw it against the pole.

As stated, we do not have the benefit of the testimony of the other witnesses, but we can pass upon the propriety of the nonsuit in the light of Wassmer's testimony. We do not understand that there was anything in the evidence omitted that would entirely destroy Wassmer's testimony. It stands as competent evidence that should have gone to the jury, unless it shows contributory negligence as a matter of law.

In dealing with the motion, the trial court said, in part:

"At the time of his testifying I made a note that after starting he did not again look until he was astride of the two Paterson-bound lanes, and then he saw the cars racing at the well. * * * But he stopped, came to a standstill, to let some cars pass him which were going toward Paterson. So far as where he stopped is concerned, he is entitled to the inference that he complied with law. On the question of whether he complied with the rules of law as laid down by our courts in the various cases discussed, wherein he was charged with the duty of seeking an opportune time and exercising

a great degree of care, which is reasonable care under the circumstances presented to him, can we reasonably infer that he did exercise such care when he says that from a standing position he looked and saw a car coming over the brow of the hill, the brow of the hill being placed at approximately three hundred feet from where he then was? There is no testimony that he did or could at that time observe the speed of that car. Nevertheless, he started up, with a 1928 Chevrolet—and this was in the middle of June—started across the highway and had his car across both Paterson-bound lanes before he made any further observation. He says he was looking ahead, he was watching where he was driving. * * * He merely looked ahead. Was that an exercise of that degree of care which was imposed upon him under the circumstances? Seeing a car coming over the brow of the hill, he proceeded to cross its path, starting from a standing position, at a speed of about five miles an hour, knowing that he had to travel a distance, as shown on the map of some forty feet, I would say, thirty to forty feet, in order to clear this other traffic. He did not accelerate his speed at any time beyond the five or six miles an hour, but at this slow speed crossed in the face of oncoming traffic which he had seen but had not determined the speed of. * * * Normally you would say that a person doesn't have to wait for a car that is three hundred feet away, but I think a reasonably prudent person would wait until he could tell whether that car was coming eighty miles per hour before crossing in front of it."

We are of the opinion that this statement of the situation clearly demonstrates the presence of a question for the jury on the subject of contributory negligence. Wassmer saw a car coming about three hundred feet away when he had to cross some thirty to forty feet to get into Jackson avenue. He was entitled to rely upon observance of the law by the driver of the other car with respect to speed. As was said in *Tischler* v. *Steinholtz,* 99 *N. J. L.* 149: "The duty to exercise reasonable care between persons using the highway is mutual, and each person may assume that others traveling on the highway will comply with this obligation. Hence the decedent had a right to assume that the driver of the auto-

mobile would exercise proper caution in respect to speed and control in approaching the crossing." In the case at bar, taking the plaintiff's version of the situation as true, there would have been no collision if the law with respect to speed had been observed, because Littell's car was then three hundred feet away and defendant's car had not yet come into view and must, therefore, have been still further away. While it has been held that one intending to make a left-hand turn upon the highway must use a high degree of care to select an opportune time, a left-hand turn is not an unlawful maneuver, nor is it such an extraordinary one that persons traveling upon the highway are not required to give others the opportunity to make such turns. When Wassmer was at the center of the road he made an observation. When he was half way across he made another. It was apparently then too late to do anything to avoid a collision. The trial court seems to have taken the view that it was Wassmer's duty to watch this on-coming traffic continuously or a least to have made a second observation sooner than he did. We think no such duty appears as a matter of law, under the circumstances presented by the evidence here. Under the proofs the jury might have found him guilty of contributory negligence as a matter of fact, but it was a jury question and not one of law for the court.

The next point for consideration concerns the sustaining of objections to a series of questions propounded to Mr. and Mrs. Littell on cross-examination. It is not necessary to deal with them all individually since they were similar in import and were asked for the same purpose, namely, with a view to attacking the credibility of these witnesses. Mr. and Mrs. Littell, who are residents of the State of New York, brought suit in the United States District Court for the District of New Jersey to recover for personal injuries and property damage sustained by them in this accident. They named as defendants Mr. Wassmer, Public Service Electric and Gas Company and Abraham Van Genderen, driver of the Public Service car. and charged negligence on the part of all defendants. That case was still pending and had not yet been tried at the time of the trial of this case at the Circuit. These

witnesses on direct examination gave testimony which was generally favorable to the defendant-respondent. They contradicted Wassmer with respect to the relative positions of the Ford and Buick cars, saying that the Ford was in the lane near the center of the road and the Buick in the right-hand lane. They also testified to a moderate speed upon the part of their car and the Ford of the respondent.

In this situation, counsel for the plaintiffs-appellants desired to attack the credibility of the testimony given on direct examination by means of the complaint filed by these witnesses in the federal court, which complaint was verified by affidavit of Mr. and Mrs. Littell. Typical of the questions asked with this purpose in mind was the following:

"*Q.* Did you state in a paper filed by you or by your attorney for you, in a case brought by you and your wife—and don't answer this, Mr. Littell, until counsel has objected—against William Wassmer, Abraham Van Genderen and the Public Service Electric and Gas Company, that the accident heretofore described, referring to the accident in question, was due to the negligence and carelessness and recklessness——"

Objection was made and sustained, the court saying:

"* * * the witness should not be asked whether in such letter or other writing he made certain statements which counsel suggests, but the proper practice is to first exhibit the writing to him and ask whether he wrote or signed it, and that has been approved by our court, that is, the courts of this state, in *Downs* v. *Railroad,* 69 *N. J. L.* 1, and affirmed by the Court of Errors and Appeals in 70 *N. J. L.* 338. That is the well-founded law of this state. It is improper to read a question without first exhibiting the paper and seeing if he signed it. The original has not been produced; its absence has not been explained; and the jury must disregard the inference that this witness at some previous time, through his counsel or otherwise, made some statement that quotes words that would indicate it was in contradiction of his present testimony, and the objection will be sustained."

The case cited by the trial court, *Daum* v. *North Jersey Street Railway Co.,* 69 *N. J. L.* 1; *affirmed,* 70 *Id.* 338, dealt with the refusal to admit into evidence a written statement

signed by a witness, and not with a question propounded to a witness concerning a statement. The court said:

"The statement was offered for the purpose of impeaching the witness, the facts set forth therein being said to be contradictory of evidence given by him on the witness stand. *But, in order to make it competent for the purpose for which it was offered, it was necessary for the plaintiff in error to have first inquired of the witness whether he had not made a statement setting forth the facts which were contained in it;* and this was not done."

This is the course which counsel was pursuing. The proper way to lay a foundation for the contradiction of a witness by a prior statement is to ask if he ever made such a statement. If he denies it, evidence may be produced to show that he did and that it contradicts his sworn testimony. But without the foundation, the statement would not be admissible. The witness may explain the statement in such a way as to make it unimportant, but if not, there is a proper case for impeachment of credibility. It may be that if this witness had denied making the statement the plaintiffs would not have been able to produce competent proof of it, but this would not deny them the right to lay the foundation and make the offer. It is necessary first to ascertain, before offering the statement in evidence, whether or not there is a discrepancy because "the statement may be received in evidence unless the witness admits the discrepancy or contradiction between his oral testimony and his previously made written statement, in which event it would serve no purpose to put the written statement into evidence." *Wasil* v. *Gula*, 12 *N. J. Mis. R.* 53.

We conclude that the trial court unduly restricted the cross-examination of Mr. and Mrs. Littell along the line suggested. "It is always allowable to show that a witness has made other and different statements than those to which he testifies." *Fox* v. *Forty-four Cigar Co.*, 90 *N. J. L.* 483. "In *State* v. *Black*, 97 *N. J. L.* 361, the Supreme Court held that, as a general rule, any fact that bears against the credibility of a witness is relevant to the issue being tried, and the party against whom the witness is called has a right to have that fact laid before the jury, in order to aid them in determining

the credit to be accorded to the person testifying." *State v. Lerman,* 107 *Id.* 77. The questions overruled were proper preliminary steps to an attack upon the credibility of the witnesses.

The remaining point which requires comment has to do with the court's charge on the subject of the contributory negligence of the plaintiffs Mr. and Mrs. Mott, who were passengers in Wassmer's automobile. The court instructed the jury that there was no evidence of joint enterprise to make Wassmer's negligence attributable to the Motts, and then went on to say:

"So that so far as this defense of contributory negligence is concerned, it depends on whether or not Mr. and Mrs. Mott did something or failed to do something which prudence required on their part. * * * Now, of course, we hear a great deal about back-seat drivers, and we try to discourage back-seat driving. But it is for you to determine whether, under the circumstances of this case, these plaintiffs were guilty of negligence in not perhaps being back-seat drivers and not warning the aged driver, or not looking and watching this car which was coming over the hill and warning Mr. Wassmer in time to either speed up and get out of the way or to stop and wait."

After retiring and deliberating for some time, the jury returned and asked for further instructions. A paper was handed to the trial judge, and after reading it he said:

"You desire to know whether Mr. Wassmer still is to be considered as the driver of the Chevrolet car and where do you consider Mr. and Mrs. Mott negligent?"

The court then delivered a further charge, in the course of which he said:

"Were they negligent in failing to warn Mr. Wassmer, the father of Mrs. Mott, and thereby tend to stop him from going into a path of danger, or get him to get out of the path of danger?"

From these portions of the charge, the jury could understand that they would be justified in imposing upon Mr. and Mrs. Mott the duty of giving orders and directions with respect to the operation of the car in which they were riding

as passengers. In the absence of any relationship which gives a passenger control over the driver of a car there is no obligation on a passenger, if and when he sees danger, to command the driver to stop or to hurry. "The rule is that * * * the passenger is bound to exercise such care for his own safety as the exigencies of the situation require." *Tobish* v. *Cohen,* 110 *N. J. L.* 296. But a duty to assume direction of the operation of the car and attempt to tell the driver how to avoid danger could not be inferred from the circumstances of this case. We think it was error to instruct the jury that it might find the passengers in Wassmer's car guilty of contributory negligence because of their failure to instruct Wassmer to stop or to hurry across the intersection.

The judgment is reversed as to all plaintiffs, and a *venire de novo* awarded; costs to abide the event.

HEHER, J. (Concurring.) I concur in the result, and also in the reasoning of the opinion, except as respects its treatment of the exceptions to the charge.

As I conceive it, the law laid upon the Motts the duty of warning the operator of the vehicle they occupied of a known and appreciated peril, if a reasonably prudent person would have given such warning under the same or similar circumstances, and the risk could have been thereby averted. The "absence of * * * control over the driver of a car" does not absolve such occupant from the duty of warning the operator of an obvious danger, if reasonable care for his own safety dictates that course.

Mr. Chief Justice Brogan, Mr. Justice Parker and Mr. Justice Perskie join in this view.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 14.