40 N.J. Super. 119 (1956)
122 A.2d 371
PATRICK McDERMOTT, PLAINTIFF-APPELLANT,
v.
STANDARD ACCIDENT INSURANCE COMPANY, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided April 20, 1956.
*121 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Hubert J. Franklin argued the cause for the appellant.
Mr. Arthur J. Blake argued the cause for the respondent (Messrs. Emory, Langan & Lamb, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff, Patrick McDermott, received workmen's compensation benefits from the defendant, Standard Accident Insurance Company, his employer's insurance carrier. Subsequently he obtained a settlement for his injuries in a law action brought against certain third persons. The full amount of the compensation was then repaid to defendant under N.J.S.A. 34:15-40. Later, Standard refused to recognize the counsel fee allowance provided for by subsection (e) of the statute. Recovery thereof was sought in the Law Division but the suit was dismissed on defendant's motion at the close of the plaintiff's proof. The legal propriety of that determination is the subject of this appeal.
The record discloses that on May 26, 1950 McDermott was injured during the course of his employment with Oklahoma Contracting Co. Thereafter, Standard Accident Insurance Company, the employer's insurance carrier, paid medical and disability benefits totalling $11,043.89 and established its lien in that amount.
McDermott brought a third-party action against Transcontinental Pipe Line Co., Fish Constructors, International *122 Excavation Co. and Peter Kero, Inc., charging that his injuries resulted from their negligent conduct. His counsel was engaged under a contingency retainer of 33 1/3% of any recovery. By reason of indemnity or save harmless agreements in favor of certain of the defendants, McDermott's employer, Oklahoma Contracting Co., was drawn into the litigation by third-party complaint. Since Standard had the liability as well as the workmen's compensation coverage for Oklahoma, it was forced to appear in the negligence suit also.
On November 21, 1951 a settlement was effected in the sum of $52,000. Participation of the various parties by their insurance companies was as follows:

Continental Casualty Co. for
 Transcontinental Gas Pipe Lines ................... $32,000
Standard Accident for
 Oklahoma Contracting Co. .......................... 10,000
Lloyds of London for
 Oklahoma .......................................... 2,500
Globe Indemnity Co. for
 International Excavation Co. ...................... 2,500
Massachusetts Bonding Co. for
 Peter W. Kero Inc. ................................ 5,000
 _______
 $52,000

The closing statement signed and approved by plaintiff shows that the full compensation lien of Standard for $11,043.89 was deducted. Apparently Continental Casualty Co. issued a separate check in that amount directly to Standard without including McDermott's name on it.
There is no doubt that since the settlement exceeded the compensation paid, under ordinary circumstances the statute N.J.S.A. 34:15-40, supra, would have subjected the amount of Standard's reimbursement to liability for an attorney's fee of one-third thereof, plus a maximum of $200 as expenses of suit. (Apparently no such expenses were deducted by counsel.) This sum of $3,681.29 would represent either a credit on the attorney's fee in the common-law action or an addition to the net amount realized by the plaintiff on *123 the settlement if the full fee in that action had already been deducted.
When proper notice of the compensation lien has been served (and such notice is undisputed here) under subsection (d) of the act, the third party or its insurance carrier is under a duty, before making any payment in the negligence case, to inquire of the injured employee as to the amount of the expenses of suit and his attorney's fee. Then the compensation carrier is entitled under subsections (b) and (e) to receive the workmen's compensation paid less the attorney's fee (based on the retainer in the liability case but not exceeding 33 1/3%) and the expenses of suit with the limitation already set forth. After deducting these items, the third party or its carrier is under a mandate to remit the balance due on the lien to the employer or his compensation insurance company.
It may be noted in passing that the Continental Casualty Company, whose representative under the testimony seemed to be conducting the settlement negotiations for all the parties defendant, did not withhold the attorney's fee from the lien but paid the full amount to Standard. And there is no proof in the record that any inquiry was made by that representative as to the fee. This failure presumably accounted for the joinder of Continental as a defendant in the present suit. A judgment of dismissal was entered as to it also but no review is sought with respect to that result.
In this connection, defendant points out that under subsection (d) of N.J.S.A. 34:15-40, Continental was under a duty to deduct the attorney's fee from the amount of the compensation lien before issuing the reimbursement check. And it contends that the failure to do so imposes liability therefor on that carrier. But under the statute defendant is entitled to receive only the difference between the compensation paid and the attorney's fee (in the absence of some legally enforceable agreement with the employee). A mistake or a willful avoidance of the statutory duty by Continental would not relieve defendant of its burden or confer upon it a greater right than the statute bestows. Certainly in the *124 absence of consent by McDermott the action taken by the two carriers could not vitiate the rights granted to him by the Legislature. All other considerations aside, the conferring of such a monetary benefit on defendant would constitute unjust enrichment and require restitution. Restatement, Restitution, § 1 (1937); cf. Brinkmann v. Urban Realty Co., Inc., 10 N.J. 113, 119 (1952).
The defense of Standard to the claim for recovery of one-third of the $11,043.89 compensation refund is that plaintiff by his attorney agreed to waive the counsel fee credit in order to effectuate the $52,000 settlement and as consideration for the contribution by Standard of $10,000 toward that end. The trial court found that such an agreement had been established and that the proof introduced in plaintiff's case supplied no facts or inferences to the contrary.
The approach to a consideration of the legal justification for the dismissal must be made with a single, overall, controlling principle in mind. Accepting as true all of the evidence submitted in the plaintiff's case and giving him the benefit of all inferences which may logically be drawn therefrom, might reasonable men honestly differ as to whether his claim has factual and legal support? Antonio v. Edwards, 5 N.J. 48 (1950); Fischetto Paper Mill Supply Co. v. Quigley Co., Inc., 3 N.J. 149 (1949); Schwartz v. Rothman, 1 N.J. 206 (1948); Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951); Repasky v. Novich, 113 N.J.L. 126 (E. & A. 1934); Lipschitz v. New York & New Jersey Produce Corp., 111 N.J.L 392 (E. & A. 1933). Application of this test in our opinion must produce an affirmative answer.
Reducing the problem to its essentials, certain basic facts stand out in bold relief. The plaintiff was paid workmen's compensation by defendant. Later, he recovered in the third-party action a sum greater than the compensation and so became obligated by statute to reimburse defendant therefor. However, since he utilized the services of an attorney in achieving the settlement and as a consequence paid a fee *125 of 33 1/3% threreof, the reimbursement of defendant was subject to diminution by 33 1/3% representing the portion of the attorney's fee allocable to the amount of the compensation which by operation of law was required to be considered as within the common-law recovery. Since the deduction was not made prima facie plaintiff's action against defendant is maintainable. Caputo v. The Best Foods, Inc., 17 N.J. 259, 264-267 (1955).
If this factual outline represented all of the proof in the record when plaintiff rested, manifestly a motion for dismissal could not be granted. So the inquiry must be: Did the additional evidence, which came into the record either by direct or cross-examination of the witnesses or through documents, so erase the prima facie case as to establish the contract contended for by defendant beyond fair debate? Lipschitz v. New York & New Jersey Produce Corp., supra, 111 N.J.L., at 395.
It appears that McDermott retained personal counsel who, with his consent, called in a trial attorney. Both attorneys seemed to have taken part in the various settlement discussions with the representative of the Continental Casualty Co., who ostensibly was speaking for all the carriers. However, when the final figure of $52,000 was agreed upon, trial counsel was not present. The terminal negotiations were handled by the personal attorney. Neither he nor the insurance companies' representative testified and so the precise nature and extent of their understanding were not disclosed at the trial.
The defendant undertook to establish through the cross-examination of plaintiff's witnesses that McDermott personally and by his attorneys had agreed to pay back the full amount of compensation and to waive the statutory right to attorney's fee deduction in order to consummate the settlement. More particularly the effort was to show that the counsel fee right was waived in return for a $10,000 contribution by Standard (on its potential third-party liability) toward the $52,000 adjustment.
*126 McDermott testified that he never made any agreement with the person who acted for the carriers to waive the counsel fee deduction from the compensation lien. His only recollection as to the explanation for withholding $11,043.89 from the $52,000 was that it was for hospital, nurses, doctors and other bills. Nowhere does it appear that he was made aware of his right of counsel fee credit against that sum. He signed the closing statement marked "I hereby approve of the above." Among other things this paper notes:

"Total amount of settlement ........................... $52,000.00
 Attorney's fee ................... $17,333.00
 Compensation lien ................ 11,043.89 28,376.89
 __________ __________
 Total Amount to be received .................... $23,623.11"

It recites also that a check for $10,000 from the Standard Accident Insurance Company was "to be received and paid directly to Patrick McDermott." No notation appears respecting waiver of the counsel fee. No release or writing of any kind was introduced to show such waiver.
The manner of payment of the settlement is curious. If Standard was to receive back its full compensation lien, why did it not simply deliver a release for $11,043.89 and receive $1,043.89 in return out of the settlement fund? Instead, Standard issued a $10,000 check directly to McDermott as its share of the settlement and then Continental Casualty, which was contributing the largest part of the $52,000, namely, $32,000, deducted the $11,043.89 therefrom and sent a check in that amount directly to Standard. No suggestion is made that the course followed was improper or illegal. Reference is made to it only as an incident of our effort to discover whether plaintiff alone or through his attorneys consciously and understandingly relinquished his credit against the $11,043.89. Certainly the circuitous route followed to reimburse Standard was not calculated to instill in McDermott, a layman, a comprehension of the waiver to which he was being subjected.
*127 When the trial attorney was on the witness stand, neither side asked him specifically if waiver of the counsel fee deduction was discussed or agreed upon by him during the settlement negotiations he engaged in with the carriers' mediator. The impression to be gained from the record is that the matter was not discussed with him. In the course of cross-examination, in a colloquy with the court, he said that defense counsel was trying to spell out a waiver agreement from the circumstances "and there was no such agreement in this case." While the record at this point is not as clear as it might be because after this colloquy and some criticism about failure to give a yes or no answer, counsel said he would withdraw the question. In any event, the answers given were not stricken.
It cannot be overlooked that this witness did not make the ultimate settlement agreement; that was handled by McDermott's personal counsel. Precisely what, if anything, was said or done at that time with respect to the compensation repayment and particularly the attorney's fee thereon, does not appear. However, the witness did prepare the closing statement. He conceded that he knew the full amount of the compensation lien was being deducted and that he explained to McDermott it was being done to pay back the insurance carrier. But he did not mention and he was not asked about waiver of attorney's fee in connection with this repayment. Nor did he say that such waiver was mentioned to the plaintiff at any time. In fact, there is no proof that either McDermott or trial counsel had actual knowledge of the statutory right to the fee.
There is some proof that after the releases had been signed and mailed out but before the checks were received, trial counsel communicated with Standard's claim representative seeking to persuade him to accept something less than the full lien. When the effort was unsuccessful, an inquiry was made as to whether a counsel fee would be paid for its recovery. It too met a refusal. At this time nothing was said about the $10,000 Standard was paying toward the settlement and apparently there was no specific reference *128 to an agreement to waive the fee. However, the unproductive conversation did not result in an attempt to recall the releases (if they had already been forwarded  and the proof is conflicting on the subject).
Study of the entire record reveals no proof of an express agreement to forego the attorney's fee in order to effect the disposition of the common-law action. Mere silence on the subject, without more, would not bar the claim. Prior to the amendment of the Workmen's Compensation Act, which is involved here, the employer or his insurance carrier was entitled to reimbursement for the full compensation paid out of a workman's recovery from a third party. No part of the expenses of suit or attorney's fee was deductible. The employer had the benefit of the workmen's efforts and expenses but he was not subjected to any of the obligations. Since the Legislature recognized and remedied the inequity (cf. Fireman's Fund Indemnity Co. v. Batts, 11 N.J. Super. 242 (App. Div. 1951)), the right of recovery ought not to be taken away unless the burden of showing a voluntary waiver by the employee is sustained by adequate proof.
There is no doubt that the circumstances described are strongly suggestive of an agreement of waiver. And it cannot be denied that the suggestion is emphasized by the fact that no action was taken to compel payment of an attorney's fee between December 14, 1951, the date of the settlement statement and July 22, 1954, when the present complaint was filed. But with respect to the latter situation, it may be, as was intimated at the oral argument, that until McDermott came in contact with his present counsel he was unaware of the counsel fee setoff to which he was entitled upon the adjustment of the negligence suit.
But when all of the facts are considered most favorably to the plaintiff, as must be done, in our judgment it cannot be said that an agreement to waive the attorney's fee credit in order to accomplish the settlement, was so clearly shown as to remove the problem from the realm of fair debate. Plaintiff's proof made out a prima facie case *129 for recovery. It is not contended that he, personally, made any such compact. That he knew or understood that it was made on his behalf, despite his signature on the closing statement, is open to dispute on his testimony. Whether his attorneys made it for him as consideration for the $10,000 contribution is not so clear as to exclude any other reasonable inference. Actually there is no oral or written proof of an express agreement of waiver by either of his attorneys. And whether one arose by implication under all of the circumstances is not so manifest as to leave the minds of reasonable men without honest doubt on the subject. In such a situation the party moving for dismissal should be required to go forward with his defense.
In view of this conclusion, it is not necessary to pass upon the plaintiff's assertion of lack of authority in the attorney to waive his statutory right, or defendant's counter assertion of ratification by plaintiff (if there was absence of authority originally). These matters can be dealt with when the facts are fully developed at the trial.
Moreover, we do not feel that a waiver agreement of the nature contended for is void as against public policy. It is true that an employee's scheduled monetary benefits as provided by the Workmen's Compensation Act for injuries received cannot be compromised. Gotkin v. Weinberg, 2 N.J. 305 (1949). But such benefits are not actually involved here, even though the attorney's fee credit is an incident of the act. In the unusual case at hand, the contract (if made) simply related to the right of the employee to be paid for the legal services provided by him for the benefit of the employer in connection with the recovery back of the compensation. Obviously the net recovery of the plaintiff in the common-law action far exceeded the total compensation liability of the employer. So the effect of the relinquishment of his right to charge the employer with a share of the attorney's fee was to cut down the proceeds of the third-party recovery rather than the workmen's compensation benefits. However, the spirit of the legislation manifestly imposes a duty on the person asserting the *130 waiver of establishing that it was made voluntarily and with a full understanding of its import and consequences.
The judgment is reversed.