41 N.J. Super. 15 (1956)
124 A.2d 23
BOBBIE LEE MILLER, ETC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
LAWRENCE HENDERSON, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1956.
Decided July 9, 1956.
*18 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Jesse Moskowitz argued the cause for the respondents.
Mr. Frederick C. Vonhof argued the cause for the appellants Lawrence Henderson and Roberta Austin (Mr. Albert M. Neiss, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this automobile negligence action, the plaintiffs were awarded verdicts for injuries suffered and expenses incurred as the result of a highway accident. The mishap occurred in the City of Zanesville, Ohio, when the automobile in which they were riding and which was owned by the defendant Lawrence Henderson, and driven by the defendant Roberta Austin, went off the road and turned over.
Since the incident took place in Ohio, every one concedes that the law of that state controls the plaintiffs' cause of action. Clement v. Atlantic Casualty Ins. Co., 13 N.J. 439, 442 (1953); Cohen v. Press, 31 N.J. Super. 45 (App. Div. 1954), certification denied 16 N.J. 197 (1954). The pertinent statute provided:
*19 "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle." Ohio Gen. Code, § 6308-6 (1948) (substantially reenacted by Ohio Rev. Code, § 4515.02 (1953)).
There is no claim here that the driver defendant was guilty of willful or wanton misconduct. Ordinary negligence is charged, and the right to recovery is predicated on the theory that plaintiffs were being transported for payment within the contemplation of the enactment.
In construing the act, the Ohio courts have said that when a definite and enforceable contract for the sharing of all or a portion of the expenses of the trip is made prior to the beginning of the journey, the rider is a paying passenger and not a mere guest. When such an agreement appears, the matter of adequacy or inadequacy of the payment (whether it be money or services or other means of compensation) is of no importance because the parties have made their own bargain. Birmelin v. Gist, 162 Ohio St. 98, 120 N.E.2d 711 (1954); Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 37, 10 A.L.R.2d 1342 (1949); Miller v. Fairley, 141 Ohio St. 327, 48 N.E.2d 217 (1943); Duncan v. Hutchinson, 139 Ohio St. 185, 39 N.E.2d 140 (1942); Dorn v. Village of North Olmstead, 133 Ohio St. 375, 14 N.E.2d 11, 14 (1938); Beer v. Beer, 52 Ohio App. 276, 3 N.E.2d 702 (Ct. App. 1935); Annotation, 10 A.L.R.2d 1351, 1361, 1365, 1367 (1950).
The testimony in the present case is in conflict as to the arrangement or circumstances under which plaintiffs were occupants of the car. However, it does appear that in the summer of 1952 the plaintiff Bobbie Lee Miller and the defendant Austin were planning a trip to Waycross, Georgia, to see their sister. Mrs. Miller's two children, the infant plaintiffs, were to accompany her. About that time, while riding in Henderson's car, she discussed the matter with him. *20 She told him she intended to go by train. He said he was thinking of visiting relatives in St. Louis and in Jackson, Mississippi, and suggested that he might be able to do so around the Christmas holidays; if she would wait until then, it would not cost her as much as the train fare. He would take her and her sister, Roberta Austin, to Georgia, provided they went with him to see his relatives in the places mentioned and provided she (Mrs. Miller) would share the driving "all the way around" and pay the gasoline bills from Philadelphia (the point of departure) to Georgia. The plaintiff Miller agreed to do this.
On December 17, 1952 Mrs. Miller and the children went to the home of her sister, the defendant, Roberta Austin, in Philadelphia. Mrs. Austin had already purchased train tickets to Georgia for herself and her sister, apparently believing that Henderson could not make the trip. However, on the evening of the arrival of the Millers, Henderson came to the Austin home and said he was ready to go. At this time the agreement already outlined was reiterated.
On the journey to Georgia Mrs. Miller gave $10 to her sister, who turned it over to Henderson when he was getting gasoline. Mrs. Austin also supplied money for the same purpose on a number of occasions. The proof showed that Mrs. Miller shared the driving three times enroute to Georgia, twice between Georgia and Mississippi; twice from Mississippi to St. Louis and had driven once after leaving the latter city before the accident.
On arrival in Waycross, Georgia, all of them, including Henderson, were guests for a week at the home of the sister. Then they left and drove to Henderson's relatives' place in Mississippi where they stayed two days. From there they went to see his relatives in St. Louis again remaining two days. The persons visited in these last two places were unrelated to Mrs. Miller; she did not know them.
We agree with the trial court that this testimony created a jury question under the Ohio cases as to whether the plaintiffs were paying passengers or simply guests. As already indicated, there was a divergence in the statements *21 of the parties as to whether the agreement contended for was made. But under well settled principles, the problem of credibility was for the jury. When the motion to dismiss was made, it was necessary to accept as true all the proof which was favorable to the plaintiffs and also to give them the benefit of all helpful inferences capable of being drawn therefrom. After doing so, if the minds of reasonable men might differ honestly as to whether the arrangement described by Mrs. Miller was made, it was the duty of the court to hold the case for jury determination. McDermott v. Standard Accident Ins. Co., 40 N.J. Super. 119, 124 (App. Div. 1956), and cases cited therein. In our judgment, this test was satisfied and the court's action in denying the motion was judicially proper. Likewise, in our opinion he did not err in refusing to grant a new trial which was sought on the ground that the verdicts were contrary to the weight of the evidence.
However, on one phase of the case we agree that reversible error was committed.
During the cross-examination of the plaintiff Mrs. Miller, a signed statement given by her after the accident was produced. She admitted her signature thereon and that it was signed three days after the accident. It was marked for identification and appears in the appellants' appendix. Perusal reveals a conflict as to the existence of any such contract as she claimed in her testimony. But efforts to examine her on the contents were prevented by the court, who took the position that such questioning was improper unless counsel represented that he intended to produce the person who took the statement in the event she denied any of the matters contained therein. He said:
"I sustained the objection. The witness is entitled to be confronted with whom she is alleged to have made any such statement to."
And farther on:
"The Court: I will allow you to interrogate on that question provided the person to whom she made the statement is to be called as a witness. She is entitled to be confronted with the person she *22 made the statement to. If you are not, then she is not going to be allowed to say. Unless you are going to call that person in the event she denies she made that statement.
Mr. Neiss: Before I note my objection, may I make another statement? A statement was taken by an attorney at law of the State of Ohio. I don't think we are going to bring him in, fly him in from Ohio. This woman acknowledges that she did say, and I think I have a perfect right to question her on it.
The Court: I have already ruled on it. I want to make it clear that you are perfectly well entitled to use the statement in cross examination of a witness. In the event she denies any of the statements, you will then call the person whom she is alleged to have made such a statement to. (Emphasis ours.)
I understand that he is a lawyer from Ohio and you are not going to call him. Therefore, I rule that you are not entitled to interrogate her on the statement itself."
Emphasis has been placed on the word "witness" as used by the court because it probably explains the erroneous ruling. For many years New Jersey has had different rules with respect to the use on cross-examination and the admissibility of a signed statement when the person testifying is a witness as distinguished from a party to the action.
When a witness has made a prior inconsistent signed statement, it is not admissible for purposes of impeachment unless a proper foundation is laid on cross-examination. This is done by calling the witness' attention to the statement in such a manner as to identify it reasonably and by obtaining his admission as to the signature thereon, if possible. However, even if the signing is conceded, inquiry must be pressed as to whether he made the declarations contained therein which are in conflict with his testimony. If they are admitted, then it would serve no purpose to put the writing in evidence. Wasil v. Gula, 12 N.J. Misc. 53, 56 (Sup. Ct. 1933). But a denial of them creates the basis for the introduction of the statement on the case of the cross-examiner. Chiesa v. Public Service Coordinated Trans., 128 N.J.L. 69, 73 (E. & A. 1942); Wassmer v. Public Service Electric and Gas Co., 122 N.J.L. 367, 373 (E. & A. 1939); Daum v. North Jersey St. Ry. Co., 69 N.J.L. 1, 5 (Sup. Ct. 1903), affirmed per curiam 70 N.J.L. 338 (E. & A. 1904); 3 Wigmore, Evidence (3d ed. 1940), § 1019, at 691; 4 Id., *23 § 1025, et seq.; McCormick, Evidence, § 36, at 66 (1954). But see Fries v. Brugler, 12 N.J.L. 79, 81 (Sup. Ct. 1830). In this situation the witness' signature or mark thereon having been conceded, it does not seem unreasonable to suppose that the statement would be received in evidence at the proper time without further proof as to the source of the contents, and its probative force as an attack on credibility left to the jury. However, the Court of Errors and Appeals held that admissibility is dependent upon the production of the person to whom the contradictory assertions were made and upon testimony by him that the witness in fact said what appears therein. Altieri v. Public Service Ry. Co., 103 N.J.L. 351, 353 (E. & A. 1927); Daum v. North Jersey St. Ry., supra, 69 N.J.L., at pages 5, 6; Cf. Silbros, Inc. v. Solomon, 139 N.J. Eq. 528, 532 (Ch. 1947); Alm v. Reinhardt, 129 N.J.L. 564, 567 (E. & A. 1943). But cf. Lugosch v. Public Service Ry., 100 N.J.L. 48 (Sup. Ct. 1924).
In view of this state of the law, it might be thought to be within the discretion of the trial court to decline to permit counsel to cross-examine a witness on a prior statement unless the representation is made that the taker thereof will testify in support of it in the event of a denial by the witness of the furnishing of the contradictory matter. But Wassmer v. Public Service Electric and Gas Co., supra, 122 N.J.L., at page 373, furnishes a contrary indication. There it was held that the cross-examination of a witness as to a prior allegedly contradictory statement was improperly curtailed, the court saying:
"It may be that if this witness had denied making the statement the plaintiffs would not have been able to produce competent proof of it, but this would not deny them the right to lay the foundation and make the offer. * * *"
And in addition we hold the view that when a witness acknowledges his signature on the paper, cross-examination as to the facts set forth therein is proper and not dependent upon the representation required of counsel in this case. *24 The limitation imposed by the Altieri and like cases goes to the matter of admissibility of the paper and not to the right to interrogate upon it.
In any event, the situation described above is not present here. The statement involved is not that of a witness but of a party to the suit, whose testimony was crucial from the standpoint of the creation of a jury question as to the liability of the defendant Henderson. The difference is fundamental. In the case of the witness the writing when accepted in evidence does not constitute substantive proof; it may be considered by the jury only in appraising the veracity of his in-court testimonial assertions. But the prior conflicting statement of a party comes into the record as substantive proof; its contents are affirmative evidence operating as admissions. Link v. Eastern Aircraft Linden Div., General Motors Corp., 136 N.J.L. 540, 541 (E. & A. 1948); Newhouse v. Phillips, 110 N.J.L. 421, 424 (E. & A. 1933); McBlain v. Edgar, 65 N.J.L. 634, 637 (E. & A. 1901); cf. McCormick, op. cit., supra, § 39, at 78, and Note, Cornell L.Q. 511 (1945) for criticism of rule; Id. § 37, at 69; Id., § 239, at 503; 4 Wigmore, op. cit., supra, § 1051; Committee on the Revision of the Law of Evidence, Report to the New Jersey Supreme Court, 41, 134 (1955).
From these observations, it is apparent that if a party on cross-examination admits his signature on a statement which is incompatible with his testimony, it may be marked for identification and without more offered in evidence on the case of the questioner. Corbett v. Van Kirk, 38 N.J. Super. 478 (App. Div. 1956).
But an adversary who holds such a statement is not bound to pursue this course. In our judgment, he has the right to cross-examine the party vigorously on the contents thereof and he assumes no duty thereby to produce the statement taker if the interrogation is met in part or entirely with a denial of the giving of the contradictory matter. In such case, it may be good trial tactics or psychologically advantageous to do so but no such burden is imposed by the law.
*25 Cross-examination is the most effective device known to our trial procedure for seeking the truth. As McCormick puts it:
"The two safeguards of the truth of testimony on the stand are the oath, with its accompanying liability to punishment for perjury, and the probe of cross examination.

* * * * * * * *
It would doubtless be generally agreed among courts and lawyers, and among writers in the evidence field, that by all odds the major safeguard of the veracity of testimony and its main factor of superiority to out-of-court statements is its subjection to the test of cross examination.
If the prior statement of the witness is contradictory of his present story on the stand, the opportunity for testing the veracity of the two stories by the two parties through cross-examination and re-examination is ideal. Too often the cross-examiner of a dubious witness is faced by a smooth, blank wall. The witness has been able throughout to present a narrative which may be false, yet is consistent with itself and offers no foothold for the climber who would look beyond. But the witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common law practice of cross-examination and re-examination was invented to explore. It will go hard, but the two questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false. It is hard to escape the view that evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony." McCormick, Evidence, § 39, at 74 (1954).
It is true that in this quotation McCormick is referring to the cross-examination of a witness who has made a prior inconsistent statement. It does not follow from this that the right to cross-examine arises out of the duty to lay a foundation and that since no similar burden is imposed in the case of a party, the right to such examination on his prior statement does not exist. On the contrary, for many years the law has sanctioned the right to cross-examine a party as to relevant and material prior admissions which are adverse to his interest in the cause being tried or which affect his credibility as a witness therein.
In the case at hand, the most important element was the proof that the plaintiffs were paying passengers. Cross-examination *26 of the plaintiff, Mrs. Miller, who supplied it was vital to the defense. The restriction imposed by the court upon the right to do so was improper and prejudicial. It might very well be that under a probing based upon the statement, she would have so modified her direct testimony as to dissipate its probative force or by her demeanor demonstrated to the jury an utter lack of veracity. Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533, 538 (Sup. Ct. 1939); Wassmer v. Public Service Electric & Gas Co., supra; Prout v. Bernards Land & Sand Co., 77 N.J.L. 719, 721 (E. & A. 1909); State (Green Pros.) v. Skoqvist, 57 N.J.L. 617, 618 (Sup. Ct. 1895).
Respondent suggests that no prejudicial error resulted because no effort was made to introduce the statement in evidence during the presentation of the defense. Of course, if offered, it should have been received as an admission. However, even though the writing constituted important and substantial proof (Corbett v. Van Kirk, supra, 38 N.J. Super., at page 485), failure to make the proffer did not cure the error already committed. Moreover, the effect of the flat declaration of the court about the necessity of producing the witness thereto may well have led counsel to the belief that it would have been useless to do so.
Other allegations of error are submitted with respect to the admission and rejection of evidence, the charge of the court and the failure to charge certain requests. Our study of them has revealed no basis for reversal.
Finally, it is urged that the verdicts are against the weight of the evidence and should have been set aside by the trial court. Tested by the rule which controls our review thereof, this contention cannot be sustained. Hartpence v. Grouleff, 15 N.J. 545, 549 (1954).
For the reason stated, however, the judgments must be reversed and a new trial awarded. No costs.