79 N.J. Super. 400 (1963)
191 A.2d 770
ROBERT SCHNEIDER, INDIVIDUALLY, ETC., PLAINTIFF-APPELLANT,
v.
BERNARD PREIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1963.
Decided June 5, 1963.
*403 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Edward W. Currie argued the cause for appellant (Mr. Norman J. Currie, attorney; Mr. Edward W. Currie, on the brief).
Mr. Robert F. Colquhoun argued the cause for respondent (Mr. William J. Gannon, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Joyce Schneider, the 11-year-old daughter of plaintiff, was struck and killed by a pickup truck owned and operated by defendant. Plaintiff sued for damages, in his individual right and as administrator ad prosequendum. The jury returned a verdict of no cause of action; plaintiff's motion for a new trial was denied, and he appeals.

I.
The accident happened shortly after midafternoon on November 30, 1960, on the north side of the Morganville-Tennant Road in Monmouth County, some 200 feet east of its intersection with Woolytown Road. The road is blacktopped, 22-24 feet wide, with a 12-inch high grassy shoulder on the northern edge. As one travels west toward the Woolytown intersection the road runs upgrade and curves to the left. Its two lanes are separated by a white dividing line.
Defendant was driving his truck westerly in the northern lane. It was a bright, sunny day, and there was no traffic. Joyce had alighted from the school bus at the Woolytown corner, accompanied by Barbara Smith, a schoolmate. They walked easterly along the northern side of the road in the direction of Joyce's home. When they passed the home of Suzie Emmons, a much younger girl, Suzie and her friend *404 Linette Lore came out of the house and walked behind them. As the four girls approached the place of the accident Joyce was nearest the northerly side of the road, with Barbara to her left. Linette was some 15 feet behind, with Suzie to her left.
There were four witnesses to the accident  defendant and Joyce's three companions. Linette and defendant were the only two of the four who testified. Linette was 10 years old at the time of trial, and 8 1/2 when the accident happened. Her age probably accounts for her very brief direct examination and the rather short cross-examination. Testifying for plaintiff, she said that she and her girlfriends had been walking on the grassy shoulder beyond the northerly edge of the road, and that Joyce was standing on the grass when defendant's right front fender struck her. On cross-examination she said that she and Suzie had been boxing, and when they came out of Suzie's home they saw Joyce and Barbara and started walking behind them. Asked whether she and Suzie were still boxing, or whether they boxed with the bigger girls as they walked along, her answer was "no." She did not remember whether they said anything to Joyce and Barbara except "hello." She said she had seen the accident happen; she was sure that Joyce was on the grassy shoulder but, strangely enough, said she did not see defendant's truck go up on the grass.
Joseph Lanzaro, who arrived at the scene before anything had been moved, found Joyce lying on the grass, her body parallel to the road about two or three feet from the paved portion. The truck was on the northerly side of the road, facing west, about ten feet from the body. When he asked defendant what had happened, the answer was, "All I can say, I don't know. The sun blinded me."
Defendant testified that he was driving west at 25-30 miles an hour just before the accident. He was about 700 feet from the girls when he saw them walking in the road. Joyce was 4-5 feet out on the paved portion and there was another girl alongside the road, and that the truck had struck Joyce. He *405 was 200 feet away. At that point he drove his truck into the left lane in order to avoid them, about a foot of the vehicle remaining to the right of the center line. He testified that the sun was "awfully bright and blinding," so that he pulled his sun visor down, keeping watch straight ahead for traffic which might be approaching over the crest of the incline. He heard a thud, came to an immediate stop about 8-10 feet from the right edge of the road, and saw Joyce lying on the grass. On cross-examination he insisted that despite the sun he could see the road straight ahead when he went over into the left lane.
An important defense witness was State Trooper Sliker, who arrived at the scene shortly after Joyce's body had been removed. He said he had spoken to Linette Lore at her home on the evening of the accident. When he was asked what Linette had told him, counsel for plaintiff entered an immediate objection because no foundation had been laid for impeaching her testimony. The objection was overruled and Sliker testified that Linette told him the girls had been boxing alongside her. The last time he saw the girls was when he said he had incorporated Linette's remarks in his accident report. Defendant's counsel had seen the report. In a question which obviously pointed in the direction of testimony he wanted to elicit, he asked the trooper whether reference to the report would refresh his recollection as to what Linette had told him about Joyc's actions. When Sliker said it would and counsel directed him to consult his report, plaintiff's attorney again objected because no foundation had been laid for contradicting Linette. The trial judge permitted the trooper to refresh his memory. After doing so, Sliker testified that Linette had told him, in the presence of her mother, that Joyce had been "walking backwards" just before the accident, but she did not say in what direction Joyce had been walking. Still reaching for the answer he wanted, defense counsel inquired of Sliker whether further reference to the report would refresh his recollection. Although plaintiff's attorney again objected, the trial judge permitted the trooper to consult his *406 report once more. Sliker then testified that Linette told him Joyce had been "walking backwards in a southerly direction" (i.e., onto the paved portion of the road). However, when asked on cross-examination whether Linette had used the word "southerly," he answered that she had not; she merely said that Joyce was "Walking backwards," "Walking backwards into the roadway, that's what she said."
Sliker's testimony as to Linette's account of the accident was obviously vital to the issue of contributory negligence. What she had told him finds reflection in the testimony of other witnesses, namely, Mrs. Schneider, Mr. Schneider and Mrs. Preis.
Sliker said he had spoken to Joyce's mother on the day of the accident and told her the results of his investigation. Mrs. Schneider confirmed this and said that he told her Joyce had been walking backwards. She testified that defendant and his wife, long-time acquaintances, had made a condolence call at the Schneider home the evening of the accident. In relating the conversation which took place on that occasion, Mrs. Schneider said she had told defendant she "found it hard to accept that Joyce was walking backwards, and he [defendant] said he didn't see her walking backwards, he saw her face on and recognized that it was Joyce." Defendant had told her he had been blinded by the sun. On cross-examination Mrs. Schneider stated she believed she had told defendant that both he and Joyce had been careless.
Mr. Schneider, testifying to the visit of the Preises, said there had been "mention of girls fooling coming down the road. There was child's play." However, he did not recall his wife's saying that Joyce was "walking backward as part of the fooling that they were doing in the road." He confirmed that defendant had said the sun blinded him.
Mrs. Preis, testifying in her husband's behalf, stated that in the course of the visit to the Schneiders, Mrs. Schneider had said they didn't hold defendant responsible "although I guess you were both in the wrong. * * * You with the *407 sun and Joyce shouldn't have been walking with her back to you."
The defense had Barbara Smith under subpoena and called her as a witness. However, the judge announced an afternoon recess just before she took the stand, and after the recess counsel decided not to call her.

II.
Plaintiff argues that the trial judge erroneously permitted Trooper Sliker to testify for defendant as to contradictory statements given him by plaintiff's witness Linette Lore, without first having laid a proper foundation  and this to plaintiff's prejudice. Contradictory statements by a witness may always be shown if a suitable foundation be laid therefor. Weilbacher v. Rudlin, 125 N.J.L. 631, 632 (E. & A. 1941); Chiesa v. Public Service Coord. Transport, 128 N.J.L. 69, 72 (E. & A. 1942), both involving verbal statements of nonparty witnesses; McCormick on Evidence, § 34, p. 63 (1954). The usual procedure for laying a foundation for the introduction of a supposed contradictory statement of a nonparty witness is to ask the witness, while on the stand under cross-examination, whether he made the statement. 3 Wigmore on Evidence (3d ed. 1940), § 1025 et seq., p. 702 et seq. Courts generally require that the preliminary question  if it is to be useful as a warning to the witness so that he may prepare to disprove the utterance or explain it away if admitted  specify its substance, naming the time, place and person to whom made. Ibid., § 1029, p. 706, and cases cited. Compare Miller v. Henderson, 41 N.J. Super. 15, 22-25 (App. Div. 1956), as to the procedure followed in the case of a prior inconsistent signed statement, and Nolan v. Pabsco Corp., 42 N.J. Super. 129, 134 (App. Div. 1956). The purposes of the requirement are to avoid unfair surprise to the adversary; to save time, since an admission by the witness may make the extrinsic proof unnecessary, and to give the witness, in fairness to him, a chance to explain the discrepancy. McCormick, op. cit., § 37, p. 67.
*408 The importance of what Joyce Schneider was doing and just where she was standing immediately before the accident is evident. These facts were relevant to the issues of negligence and contributory negligence. See Wigmore, op. cit., § 1020, 1021, pp. 692, 694. Linette's testimony had Joyce standing on the grass of the shoulder. Trooper Sliker, testifying as to what Linette told him, placed her out in the road. The jury thus had his impeaching testimony, and this without a proper foundation first having been laid by defense counsel asking Linette (a nonparty witness) on cross-examination whether she had not told the trooper that Joyce had been walking backward onto the road. The trial judge should not have allowed Sliker to testify when there was repeated objection that no suitable foundation had been laid. See, however, the more modern proposal that the trial judge may in his discretion exclude extrinsic evidence of a witness' prior contradictory statements, whether oral or written, unless the witness was so examined while testifying as to give him an opportunity to identify, explain or deny the statement. American Law Institute, Model Code on Evidence, Rule 106(2), p. 117 (1942), and comment, page 127; Report of the New Jersey Supreme Court Committee on Evidence, Rule 22, p. 68, and comment, p. 70 (1963), and Rule 45, p. 85; but compare Report of the Commission to Study the Improvement of the Law of Evidence (established under JR 15, 1955), Rule 22, p. 27 (1956), adopting the conventional view that extrinsic evidence of prior contradictory statements shall be excluded unless the witness was so examined. And see Wigmore, § 1027, pp. 704-705; McCormick, § 37, pp. 68-70.
Defendant claims that plaintiff, in effect, laid a foundation for the contradiction of Linette Lore because he attempted to neutralize or contradict, through Mrs. Schneider and her plaintiff husband, the testimony of Trooper Sliker before it was given. It will be recalled that Mrs. Schneider said the trooper told her Joyce had been walking backwards; and Mr. Schneider referred in his testimony to the fact that during the visit of Mr. and Mrs. Preis there had been "mention *409 of the girls fooling coming down the road. There was child's play." Defense counsel contends that his questioning of Sliker as to Joyce's actions before the accident was proper because his veracity had been impugned in advance, and that it was never his purpose to impeach witness Linette by that testimony. The argument does not impress us; at best, it amounts to an attempt to rationalize basic error in the admission, over objection, of Sliker's testimony.
Defendant also contends that the irregularity of admitting Sliker's impeaching evidence without the laying of a foundation could have been cured by putting Linette, the impeached witness, on the stand in rebuttal, to give her version of the statement imputed to her, citing 98 C.J.S., Witnesses, § 608, p. 611 (1957), as supporting authority. Plaintiff did not call Linette in rebuttal, and we have found no New Jersey decision which required him to do so.
It is appropriate to comment upon plaintiff's claim that the trial judge erroneously failed to instruct the jury that any contradictory statements relating to Linette's testimony could only be considered in appraising her veracity and, if accepted, did not constitute a substantive proof. Defendant contends the charge was adequate and, moreover, plaintiff failed to object to the omission which he now contends was error. The trial judge said:
"Now, admissions made by parties may be considered and used as affirmative evidence in the case by the party offering it or divulging it. On the other hand, evidence  or admissions, rather, of non-parties, of witnesses, is not usable as affirmative evidence. It is usable only to attack or establish credibility of the witnesses. You will recall that there were admissions, or alleged admissions, by the defendant of what happened at the time. Now, he would be a party so statements alleged to be admissions made by him could be used as affirmative evidence; but of those people who were not parties of what someone knew, such as a stranger to the cause, that could only be used to attack their credibility. * * *"
Although somewhat ineptly stated ("admissions" of nonparty witnesses), the instruction can pass muster. The doctrine *410 accepted by almost all courts is that a prior contradictory statement is not usable as substantive evidence of the fact stated. 3 Wigmore, op. cit., § 1018, p. 688. See Miller v. Henderson, above, 41 N.J. Super., at page 24. McCormick, in his work on Evidence, § 39, p. 74, says:
"The reason for the orthodox view that a previous statement of the witness, though admissible to impeach, is not evidence of the facts stated, is clear and obvious. When used for that purpose, the statement is hearsay. Its value rests on the credit of the declarant, who was not under oath nor subject to cross-examination, when the statement was made."
McCormick criticizes the usual instruction, that the jury must not consider the prior statements of the witness as substantive evidence, but solely as bearing on his credibility, as a "mere verbal ritual."
"* * * The distinction is not one that most jurors would understand. If they could understand it, it seems doubtful that they would attempt to follow it. Trial judges seem to consider the instruction a futile gesture. If the prior statement and the present testimony are to be considered and compared, what is the purpose? The intuitive good sense of laymen and of lawyers seems to agree that the only rational purpose is not merely to weigh the credibility of the testimony, but to decide which of the two stories is true. To do this is ordinarily to decide the substantive issue.
The distinction between using a previous statement as evidence of its truth, and as evidence that the declarant in testifying differently is lying or mistaken, is surely a most artificial one. Unless the statement may be true, it does not have the effect of shaking the credibility of the testimony; and that it may be true is about all one means by accepting a statement as evidence of its truth. The notion that the judge and the jury may only say, `We know not which story is true; we only say that the witness blows hot and cold, and hence is not to be believed in either,' demands a finical neutrality alien to the atmosphere of jury trial." (Op. cit., § 39, pp. 77-78; italics in the text)
Compare Report of the New Jersey Supreme Court Committee on Evidence, Rule 63(1) and comment, pp. 129-130.
We consider Sliker's testimony regarding what Linette told him as extremely damaging to plaintiff's case. The *411 issue of contributory negligence was a close one. The erroneously admitted evidence went to the very essence of the controversy and seriously affected plaintiff's substantial rights. There must be a new trial if substantial justice is to be achieved. R.R. 1:5-3(b).
Reversed and remanded.